Our second case on the call of the docket today is agenda number two, case number 112-116, People v. Aguilar. Counsel for the appellant. Good morning, your honors. My name is David Hollins. I'm here on behalf of the appellant, Mr. Alberto Aguilar. And may it please the court, the central component of the Second Amendment is the right to keep and bear arms for the purposes of self-defense. And this right is most notable within the home. Outside of the home, the government of Illinois has significant leeway to regulate the carrying of firearms. But what Illinois cannot do is completely prohibit the exercise of the right itself. The aggravated unlawful use of a weapons statute, however, does just that. There are two issues that are in dispute before this court this morning. The first is whether the protections of the Second Amendment exist beyond one's private property. And second, does the aggravated unlawful use of a weapons statute act as a ban on the exercise of the right? I'd like to start with the instinctual notion that the Second Amendment, like virtually every constitutional right, does not simply disappear when one steps outside their home. In fact, the United States Supreme Court was operating under this assumption when it noted that governments will still be able to prohibit firearms in sensitive places, such as schools, courthouses, government buildings, and the like. For that finding to make sense, of course, the Second Amendment would have to exist outside. In the same vein, the United States Supreme Court noted that the need for the protections of the Second Amendment are most acute within the home, that the right is most notable within the home. Again, for there to be a degree of acuity in regulating this right, the Second Amendment does have to exist outside. In fact, the text of the Second Amendment itself forecloses the state's argument that the right simply doesn't exist outside. The text of the Second Amendment is in no way limited to the home. The Third Amendment, of course, is limited strictly to the home. The Fourth Amendment has a special protection inside of the home. The Founding Fathers clearly understood that a right can be limited to the home in the actual text of the amendment. The United States Supreme Court noted that to keep and to bear arms are distinct terms. To keep a firearm means to possess a firearm. To bear a firearm means to wear or carry on one's person or in one's clothing in case of confrontation, in case of an emergency. To find that the Second Amendment doesn't exist outside would actually render the word bear superfluous from the text of the Second Amendment. Is this a challenge to the entire statute or just the section that this man was convicted under? It is only a challenge to the subsection under which my client is convicted, was convicted. I'm not in any way challenging the other prohibitions under the aggravated unlawful use of a weapon statute. Does the fact that the defendant denied the gun was his have any impact on the ability to raise this? It has no impact at all, Justice Carman. This is a facial challenge, which means that this Court is simply reviewing the statute as it is written and applying constitutional precedent. So in a facial review of the statute, if a statute is facially unconstitutional, that means it would be unconstitutional when it was passed by the legislature and unconstitutional the day of my client's trial and unconstitutional now. So I can't emphasize enough that the facts of the trial are irrelevant to the constitutionality of the law. But he does have to have standing in order to bring this. Standing where we've said in the past that he suffered an actual or impending injury. Injury is caused by a defendant's acts here, et cetera. The state certainly raises a number of questions about what is called standing. They raise it in different ways. Your client is 17 or was 17 at the time. That's correct. He was on private property. The testimony was that the police came to a scene where there was a group of young people who were throwing bottles at cars and he was among the group and ran. There's no testimony here that he was carrying a gun for self-defense. Does he have standing to bring this claim? He does have standing, Justice Tice. My client, like every defendant, has a personal right not to be convicted under an unconstitutional law. So the moment that my client was indicted, he had standing. And, of course, he continues to have standing because he was convicted under the statute that he is challenging. A concrete example of what I'm saying here today is that, for example, the Aggravated Unlawful Use of a Weapon statute is being challenged right now in the Seventh Circuit Court of Appeals. That case is being brought by civil plaintiffs. So those civil plaintiffs have to file documents to show that there's a threat of prosecution against them to establish standing. In this case, of course, my client doesn't have to do that because he was prosecuted. But once standing is established in that case and once standing is established in this case, the analysis of the merits of the constitutionality of the statute is identical. Does a 17-year-old as a minor have a Second Amendment right? Yes, he does. Any age minor? No. I'm not arguing some sort of unfettered Second Amendment rights. But my client is only challenging the statute under which he was convicted, which doesn't differentiate at all on age. There's not an age requirement. My question is, does it apply to him? I mean, he has to be able to – he's trying to assert a Second Amendment right. So my two questions are, does he have a Second Amendment right? And secondly, does he have a Second Amendment right to possess a defaced weapon? Is that the kind of weapon that falls within the Second Amendment as Heller and McDowell have described? That type of weapon does not fall within the Second Amendment. But my client was never charged with having a defaced weapon. The statute that's at issue here is an unconditional ban on all firearm carrying for all Illinois citizens across the entire state. So he was only charged with possession of a firearm. Another example would be under a facial challenge, a defendant could move to dismiss his indictment, and then, of course, there would be no facts known at all about the case itself. And then a reviewing court would review the statute facially and determine whether the actual terms of the statute conflict with constitutional precedent, as this court did in Madrigal. Based upon the state's briefing before this court, it wouldn't surprise me if the state appeared before this court this morning and resorted to a series of ad hominem attacks against my client or discussion of the facts of the trial. But I can't emphasize enough that the facts of the trial have no relevancy to the facial validity of the aggravated unlawful use of a weapon. Heller expressly limited or approved of concealed, let me say it this way, they specifically limited to possession in the home.  No, I would not agree with that. The issue presented in Heller and McDonald was a statute that bans in the home possession. But the preliminary issue in Heller and McDonald was whether the Second Amendment applies to individuals and whether that right was fundamental. So the very first sentence of the McDonald decision is, in Heller, we held that the Second Amendment protects the right to keep and bear arms for the purposes of self-defense. And we struck down a District of Columbia law that banned possession of handguns in the home so that that holding wasn't dependent on the statute at issue. Has the state here pointed to language in Heller that explicitly limits the right to only the home? There is no language at all in Heller and McDonald that explicitly limits the rights to the home. In fact, as I mentioned, that when the United States Supreme Court said that the right is most notable within the home, then that means that the right also exists outside of the home, that the government of Illinois and the government of any state, like 49 other states that permit firearm carrying, the right itself can be heavily regulated. The United States Supreme Court found that the Second Amendment protects against both private and public violence. And in coming to that conclusion, the United States Supreme Court relied upon several cases that explicitly found a constitutional right to the public carrying of firearms. Those cases are Nunn v. State, Andrews v. State, State v. Chandler, State v. Reed. Before you get there, didn't Heller expressly approve of concealed carry laws? It did, and in fact, in doing so. Isn't that, just before you get into your answer, isn't that somewhat of a severe blow to your argument that rights exist outside of the home, just as they exist inside the home? It's not, and in fact, it supports my argument, because when the Supreme Court made that finding, it actually cited to the very cases that I just listed. Those cases held that you can ban concealed carry so long as some form of public carrying is allowed. The states, and Illinois included, of course, can regulate the manner in which the firearm is carrying, but those cases found an explicit right to the public carrying of firearms. In fact, in the Nunn decision, which the United States Supreme Court explained, perfectly captured the meaning of both the prefatory and operative clauses of the Second Amendment. In that case, the Georgia State Supreme Court struck down a law that, for all intents and purposes, is identical to the aggravated unlawful use of a weapons statute. The statute in Nunn banned all pistol carrying everywhere outside, and the United States Supreme Court found that that decision, which struck down that law, perfectly captured the meaning of the Second Amendment, and actually used that case to evaluate Washington, D.C.'s law in finding that that firearm ban was unconstitutional. Did the two federal district courts in Illinois who addressed that same argument reject it outright? The central and southern districts of Illinois found that the Second Amendment does not exist beyond the home, but those findings were wrongly decided because they rest on a non sequitur. Those courts essentially said the United States Supreme Court hasn't yet held that the Second Amendment exists outside, therefore it doesn't exist outside. But that's not a valid mode of constitutional review. Lower courts are bound not only by the results of United States Supreme Court's decisions, they're bound by the portions of the results that are necessary to those decisions. So I'm simply asking this court to apply the rationale of the Heller-McDonnell decision to confront this novel question of constitutional law. You mentioned the case from the central district. I think it's Moore v. Madigan that's been argued before the Seventh Circuit. Correct. Should our court, first of all, would a decision by the Seventh Circuit have any effect on the decision this court makes? And secondly, if so, should we hold this case until the Seventh Circuit decides that case? The Seventh Circuit's decision is not binding precedent on this court. Should it be? Should we hold this case to see what they say? This court doesn't need to hold the case until the Seventh Circuit's decision because the Seventh Circuit's decision would only be persuasive, not binding precedent for this court. The aggravated unlawful use of a weapon statute acts as an unconditional ban on the right of public carrying outside of the home. And I mean that literally in the sense that there is no condition which an Illinois citizen could fulfill that would allow her to lawfully carry firearms. This is a ban on all firearms everywhere across the state for all ordinary citizens. And I think one of the aspects of this law that is striking in terms of the lack of tailoring here is that this law applies everywhere in Illinois. There's no tailoring at all in terms of meeting local needs and local values. The statute applies everywhere in Illinois, and Illinois comprises a geographically diverse set of citizens. Illinois citizens live in rural areas and unincorporated areas and suburbs and cities of varying sizes. But the statute's not tailored at all in terms of geography. So whether a citizen lives in Macon County or Wayne County or Rock Island or McHenry or Cook, this statute applies equally everywhere. It's a total ban on the public carrying of firearms for the purpose of self-defense, and that is the central component of the Second Amendment. Illinois is a no-carry state. It is the only state that does not permit some form of public firearm carrying. So Illinois, like every other state, will be able to heavily regulate the Second Amendment. Illinois, like every state, can require FOID cards. It can require training. Illinois can ban firearms in places outside of the home. It can ban certain types of firearms. But what Illinois cannot do is completely prescribe the exercise of the right itself. Because you say, Mr. Howland, that the right under Heller really is personal to the individual as opposed to the place. Is that what your analysis is? That's correct, but in the same vein. Under the Second Amendment. That's correct. And in the same vein, though, governments can absolutely ban firearms in certain places where individuals go. This is not an unfettered right, and I'm not here to argue some sort of greater policy decision. My argument to this court is a narrow one. It's simply that the Second Amendment exists out of doors, and therefore, Illinois cannot prescribe the right entirely. If there are no further questions, I'll reserve. Thank you. Good morning, Chief Justice, Your Honors, Counsel, may it please this honorable court. My name is Veronica Calderon-Malavia. I'm a Cook County Assistant State's Attorney representing the people of Illinois in this case. Defending claims that the Aggie UW provision, which he was convicted on, is spatially invalid because it completely abrogates the law. The right to carry a loaded firearm in public, which according to the defendant is protected by the Second Amendment. However, defendant lacks standing because this is not a public carry case. Defendant was found not guilty of the public carry provision of the Aggie UW statute. This case is really about possession of a loaded firearm in someone else's property. Defendant was convicted for having a loaded. Did you make the standing argument below, or is this the first time you're making the standing argument? This is the first time we're making it in the, we did not make it in the appellate court. And at the trial level, defendant did not raise the issue. And it is our position that in re Veronica C. supports our position in making this argument here. And that we did not waive it pursuant Veronica C. But did you raise it in the trial court? Defendant did not raise this claim in the trial court. He first raised this claim on direct appeal. I mean the standing issue. The standing issue we raised before this court. I understand that. But was that standing issue raised in the trial court? No, because defendant didn't raise the Second Amendment claim at the trial court. He waived that. I follow you. Okay, we raised it first before this court. Thank you. At the end of the day here, though, defendant was convicted of violating the AUUW statute, right? He was convicted of filing what I'll call one of the subsections, the property of others provision, which prohibits the possession of a loaded handgun anywhere except where he's on his own land, abode, legal dwelling, or a fixed place of business. Well, if a person such as defendant doesn't have standing to assert a facial challenge to the statute he stands convicted of, isn't standing somewhat meaningless? No, Your Honors. He argues basically that there is a public carry right to carry your gun outside your home, not in someone else's property, outside your home in public. That is his theory. However, he was found not guilty of having a handgun in public under that subsection. What he was found guilty of was having a handgun in his friend's backyard. And so the provision that he was convicted on doesn't deal with public carry. In other words, the AUUW statute is not just a public carry statute. Well, the public carry provision in which he was then found guilty bans loaded firearms, as I stated, in public street, alley, or land. The provision in question bans firearms in someone else's property, in a school, in a mall, in a theater, anywhere that falls between the spectrum of someone's home and public. And consequently, Your Honors, there is a constitutional application to this provision because it could be used to ban handguns in sensitive places like schools and government buildings. Therefore, by invalidating this provision, this Court would be invalidating the actual provision that allows Illinois to ban handguns in sensitive places. And as a result, since there is a constitutional application, defendant cannot sustain a facial challenge as a matter of law. Although the review of the AUUW statute public carry provision is important in light of Howler and McDonald, this is not the right case, and the defendant is certainly not the right defendant to litigate that issue. Even if this Court finds the defendant has standing, his claim still fails. There is no dispute that the actual holding in Howler answered the narrow question whether the Second Amendment protected the individual right to possess a loaded handgun in the home for the purpose of self-defense. However, defendant disregards the limited nature of Howler and argues that the Court's textual and historical discussion constitutes an implicit holding that the Second Amendment extends outside the home and protects public carry of arms, subject only to the concealed weapons or sensitive place provisions. Your Honors, defendant's position is fundamentally flawed. The Howler Court itself explicitly stated that its opinion was not an exhaustive historical analysis of the scope of the Second Amendment. And when the doors open to other historical resources beyond Howler, defendant's public carry claim falls apart. In fact, the textual and historical analysis beyond Howler proves that the Second Amendment was intended to establish a federal constitutional floor of the right to keep and bear arms. Although the states could not ban the possession of weapons in their home, they were free to regulate or even ban the possession of arms in the public in accordance to their individual values and public safety concerns. With respect to the text, defendant claims the text supports the interpretation that the Second Amendment extends outside the home. And in his brief, he points to the fact that the Court defined there to include carrying, and that you can't carry, and that therefore means that you can carry it outside your home. But when you place the terminology used in the amendment in proper historical context, it undermines his position. It must be remembered when the U.S. Constitution was ratified, it was just the beginnings of the Industrial Revolution. And it was just beginning. And most citizens were farmers, ranchers with acres of land to protect. You couldn't just open your door and look out your backyard and protect your home. A lot of times you had to travel through your land to protect your crop and your stock. So the fact that the Court defined there to carry doesn't support defendant's position that that means that you can carry that weapon outside the home. Moreover, it's important to note that what we call now public carry laws in England and early states use a completely different terminology. They use to go and ride armed. They use the word carry. So again, the text fails to support defendant's position. Defendant also relies on certain concealed cases that Heller discussed to claim that while a state could ban concealed weapons, it couldn't ban public carry in its entirety. Again, opening the door to other historical evidence, defendant's position is proven wrong. Is there any legal significance that we're the only state that has a statute like this? No, there's no legal significance. Every state is free to regulate whether or how their citizens could carry loaded weapons in their communities. And in fact, historical evidence shows that our English ancestors did accept and did implement public carry bans. And the most important piece of evidence of that is the Statute of Northampton, where in that statute, unless under King's business, no man was permitted to go nor ride armed by day or night. Heller also looked to see how the right to bear arms was understood by the states of the 19th century. And now a complete overview of the 19th century state laws, there were varying approaches to the issue of public carry among these states. In conflict with the cases cited by the defendant, there were some states that actually fashioned laws to mirror those of the Statute of Northampton and banned going armed in public places. Now, the varying and distinct approaches mean something. It means that although the several states understood that while the Second Amendment protected an individual right to have a weapon in the home, that right did not extend outside and that the states were free to decide or regulate or ban the public carry of weapons outside in accordance with their values and public safety concerns. The defendant also argues that Heller's approval of firearm regulations in sensitive places means that the Second Amendment must extend outside the home. However, read in proper context, the passage did not deal with weapons outside or public carry laws, but it was the court's attempt to limit the holding in question presented, namely that the right to bear arms occurs in the home. The court expressly stated that nothing in its opinion should cast doubt on the longstanding firearm regulations. In other words, Your Honors, the court was trying to make sure that the courts below did not have a knee-jerk reaction and use a broad reading of Heller to strike those laws that protect sensitive places. And, in fact, that's what the defendant is exactly asking this court to do. By striking the provision in question, it would be striking the provision that Illinois uses to protect sensitive places. Therefore, we'd ask that the court reject that. And find, in accordance with Shepard and more, that the Second Amendment does not extend outside the home. However, even if this court finds that the Aggie UW provision in question burdens conduct protected by the Second Amendment, it's still constitutional. Because it doesn't reach the core of the Second Amendment, the home, the people suggest that a lower level of scrutiny should apply. However, the statute clearly provides a heightened level of scrutiny and strict scrutiny. In enacting the Aggie UW statute, the legislature addressed several compelling interests. It protects the provision in question which the defendant was convicted on. It protects citizens from the danger that could result when others bring loaded firearms into the property. It also protects police officers and the public from the inherent danger of loaded firearms in malls, theaters, churches, and other sensitive places, which was explicitly found to be constitutional in Heller. It is also nearly tailored. It excludes from its reach the home as well as fixed place business. It also allows the use of weapons for hunting, fishing, and other recreational activities. The provision clearly passes constitutional muster, and under the most significant level, most strict level of scrutiny, we'd ask that this court affirm. And moreover, I'd also like to point out that even taking the public carry equation out of this case, the defendant does not have a valid Second Amendment claim. Below, he never stated that he had the weapon for self-defense. In fact, he denied ever having the weapon. He's 17 years old, and through the history of England and now, he's considered the definition of infancy in maturity as under 21 years old. And so we'd ask this court to affirm the defendant's conviction. The issue before this court is in no way about sensitive places. Illinois, for example, has a ban on the books right now regarding bringing firearms into bars. That's presumably constitutional. If this court were to find that the subsection under which my client was convicted is unconstitutional, that would in no way affect, for example, Illinois' ban on bringing firearms in bars. This is a challenge to the subsection of the statute under which my client was convicted, which is a ban on all forms of firearm carrying everywhere. So a ban on bars in Illinois is superfluous right now, because right now there is a ban on all firearm carrying everywhere. If this court has questions on standing, I would be happy to answer them. But simply, my client has a personal right to not be convicted under an unconstitutional law, like every criminal defendant. The state's argument regarding the text conflicts with Heller. When Heller was explaining what the text of the Second Amendment meant, it wasn't confining it to one circumstance. In fact, it went right to a dictionary definition and said that to bear arms means it's plain common sense meaning. It's the same meaning that's in criminal statutes. It's the same meaning at the time of the conception of the Second Amendment, and it's the meaning that it has right now. To bear arms and keep and bear arms means to wear or carry on one's person in case of confrontation. The state's historical argument is completely at odds with Heller. The state is essentially asking this court to conduct its own independent historical analysis of the Second Amendment. But as the McDonald decision put it, Heller was one of the most thorough explanations of any constitutional right that's been put forth. The state's argument on the Statute of Northampton conflicts with the Heller decision. Heller relied on a case called Simpson v. State that actually rejected the Statute of Northampton argument. No court in the country has adopted this 14th century Statute of Northampton argument. This court should not be the first. If there are any further questions, I would be happy to answer them. In conclusion, the state, of course, has a right to criminalize the abuse of a constitutional right. But what the government of Illinois cannot do is criminalize the constitutional right itself. Thank you, Your Honors. Thank you. Case number 116, People v. Aguilar, is taken under advisement as agenda number 2.